UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JUDITH CURRAN and MICHAEL EARP, for the use and benefit of the Principal Funds, Inc. Strategic Asset Management (SAM) Balanced Portfolio, Principal Strategic Growth Portfolio, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Principal Management Corporation, Principal Global Investors, LLC, and Principal Funds Distributor, Inc.,<br><br>Defendants. | Case No. 4:09-cv-00433-RP-CFB<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Action filed:   October 28, 2009<br><br>Hearing Date:   March 16, 2010<br>Hearing Time:   9:00 a.m.<br>Courtroom:   420 |

Defendants submit this reply brief to address arguments raised in Plaintiffs' resistance to this motion (the "Resistance") on the following topics: (1) why Plaintiffs do not have standing to assert claims pertaining to the Underlying Funds; (2) why Plaintiffs' cases are distinguishable; and (3) why Plaintiffs fail to state a claim against PGI.[1]

## I. PLAINTIFFS DO NOT HAVE STATUTORY STANDING TO BRING SECTION 36(B) CLAIMS ON BEHALF OF THE UNDERLYING FUNDS.

Defendants' opening brief explained that Plaintiffs lack standing to allege Section 36(b) claims on behalf of the Underlying Funds because Plaintiffs allege only that they own shares in the two SAM Funds. (Op. Br. at 6–8.) Plaintiffs respond by claiming an injury that confers Article III standing because the SAM Funds' shareholders indirectly bear the fees Defendants charged to the Underlying Funds, and that this permits them to allege derivative claims on behalf of these funds. (Res. at 4–6.) While Plaintiffs' arguments address the injury-in-fact requirement for constitutional standing, they do not satisfy the separate requirement for statutory standing. The two primary authorities on which Plaintiffs rely establish that a Section 36(b) plaintiff must satisfy both constitutional injury-in-fact standing and the separate Section 36(b) standing requirement that a private plaintiff must own shares in the mutual fund that paid the challenged fees. *In re Am. Mut. Funds Fee Litig.*, No. 04-5593 GAF (RNBx), 2009 WL 5215755, at *42 (C.D. Cal. Dec. 28, 2009); *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d 580 (D. Md. 2007) (dismissing on statutory standing grounds Section 36(b) claims as to funds whose shares plaintiffs did not own, even though they met Article III's requirements as to those same funds).

The statutory standing requirement comes straight from the wording of the statute. Under Section 36(b), the only parties with standing to bring claims on behalf of mutual funds are "the

---

[1] Although Defendants dispute many of the arguments and characterizations contained in the Resistance, they have limited this reply brief's scope pursuant to Local Rule 7(g).

NB1:792803.1                                   1

[SEC], or a security holder of such registered investment company on behalf of such company." 15 U.S.C. § 80a-35(b). Parsing this sentence, the "security holder" is self-explanatory: someone who holds shares in the "registered investment company." The "registered investment company" refers to the entity that registers its shares with the SEC. That may be a single legal entity that issues shares representing interests in a single pool of assets or a single legal entity that issues shares representing interests in a variety of asset pools. *Mut. Funds*, 519 F. Supp. 2d at 588–590. In the latter case, these pools of assets are called "series" and are, for all practical purposes, separate mutual funds. *Id.* at 588 n.11. In the present case where a corporate entity (PFI) is the registered investment company and issues shares representing interests in separate series (e.g., the SAM Funds), each individual series is treated as a "registered investment company." *Id.* at 588–590. As a result, Section 36(b) requires that, to have standing to challenge the management or distribution fees paid by a mutual fund, the plaintiff must own shares in that fund. *Id.*

Plaintiffs cite to *American Mutual* in an effort to support the canard that they are "security holders of the Underlying Funds, [because] Section 36(b) does not distinguish owners who hold shares through a first level fund or through a fund of funds."[2] (Res. at 5.) The problem for Plaintiffs is that *American Mutual* stands for an entirely different proposition that is not at issue here: if a plaintiff owns one class of shares in a single mutual fund that issues multiple classes of shares (e.g., Class A shares but not Class B), that plaintiff will have standing under Section 36(b) to allege claims on behalf of that same fund's other share classes (i.e., Classes B, C, J, etc.).[3]

---

[2] The only case to address this issue does so in the context of a closely analogous statutory standing provision for short-swing profits under Section 16(b) of the Securities Exchange Act of 1934—and it rejects Plaintiffs' position. *Untermeyer v. Valhi, Inc.*, 665 F. Supp. 297, 299–300 (S.D.N.Y. 1987). (*See* Op. Br. at 8 n.6.)

[3] As the *American Mutual* court noted, "[t]he different share classes in a particular Fund invest in the same portfolio of assets, receive the same types and level of service, and are managed in the

*Am. Mut.*, 2009 WL 5215755, at *42. On the very different point of stretching Plaintiffs' standing to attack fee practices of the Underlying Funds in which the SAM Funds have invested, *American Mutual* contradicts Plaintiffs' theory by reiterating that "[t]o have statutory standing under Section 36(b), a plaintiff must own shares in the investment company which paid the fees being challenged as excessive." *Id.* Plaintiffs do not own shares in the Underlying Funds, and therefore do not have the right to challenge the fees those funds paid to Defendants.

## II.   PLAINTIFFS' CASELAW DOES NOT SPEAK TO THE FACTS ALLEGED IN THE COMPLAINT.

Plaintiffs urge the Court to accept their allegations on the argument that similar claims have passed muster in other cases. (Res. at 11–12.) But each of those cases is inapposite because the facts that drove their analysis are not alleged here. In *Gallus*, the complaint alleged that during the prior years, as the funds' net assets increased, so did the advisory fee rate. (Declaration of Andrew R. Escobar at H82–H83 (filed concurrently with opening brief).) The *Gallus* court found "compelling" the plaintiffs' argument that this rise in rates indicated that any benefits generated by the economies of scale have not been passed along to the funds' shareholders. *Gallus v. Am. Express Fin. Corp.*, 370 F. Supp. 2d 862, 866–67 (D. Minn. 2005). Even still, the *Gallus* district court opined that the complaint survived by "only the narrowest of margins." *Id.* at 867. Indeed, the *Gallus* district court was so skeptical of that complaint's allegations that it only permitted the plaintiffs to conduct a limited phase of discovery after which the defendants could move to reconsider the ruling on the motion to dismiss. *Id.*

---

same manner." 2009 WL 5215755, at *42. The court held that even though different share classes are assessed different fees and/or fee levels, this did not preclude the plaintiffs from having standing to represent all share classes for a particular fund.

Similarly, in *Dumond* and *Strigliabotti,* the plaintiffs alleged that over time the funds' management fees increased at a significantly greater rate than assets under management, and that the management fees offered no breakpoints. *Dumond v. Mass. Fin. Servs. Co.*, No. 04-11458-GAO, 2006 WL 149038 (D. Mass. Jan. 16, 2006); *Strigliabotti v. Franklin Resources, Inc.*, No. 04-00883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005). (*See also* Supplemental Declaration of Andrew R. Escobar at A18–A21, B50–B53.) In *Hunt*, the plaintiffs alleged that over time the funds' management fees increased 34% from 1996 to 2004, even though the assets under management **decreased** from $31.3 billion to $24.9 billion during the same period. *Hunt v. Invesco Funds Group, Inc.*, No. 04-2555, 2006 WL 1581846 (S.D. Tex. June 5, 2006). (*See also* Supp. Escobar Decl. at C106–C107.) In all four cases, the plaintiffs pointed to these fee-increase-over-time allegations to set forth plausible claims that the defendants were not sharing economies of scale with fund holders and that the fees were excessive under *Gartenberg*. By contrast, Plaintiffs' Complaint contains no such allegations.

Plaintiffs also rely heavily on *In re Federated Mutual Funds Excessive Fee Litigation*, which is readily distinguished because it involved extreme facts such as the following:

- An advisory fee that is 4 to 5 times larger than the fee PMC charges the SAM Funds (1.275%–1.425% vs. 0.32%[4]);

- No breakpoints in the adviser's fee schedule;

- When the fund was brought into the fund complex, its advisory fees were kept at the former rate (1.275%–1.425%) even though the rate charged by defendants to the other, smaller, equity mutual funds in the complex for the same type of services was 0.75%; and

- The fund had the highest expense ratio of all the 266 large mutual funds evaluated by Morningstar, which also awarded the fund several failing grades.

---

[4] Principal Funds, Inc. disclosed in its March 1, 2010 Registration Statement that the effective fee PMC charged to the SAM Funds in 2009 was 0.35%. (Supp. Escobar Decl. at D134.)

2009 WL 5821045, at *4–*7 (W.D. Pa. Sept. 30, 2009).[5] The key facts alleged in the several cases relied on by Plaintiffs are missing here. This case does not fit the mold Plaintiffs offer.

## III. DEFENDANT PGI SHOULD BE DISMISSED FROM THIS ACTION.

The Resistance states that PGI should remain liable under Counts I and II because it is an "affiliated person of such investment advisor" that shares a co-employee with PMC under an investment service agreement. (Res. at 27.) The Amended Complaint, however, does not allege that this agreement applies to the SAM Funds; in fact, it does not. (Supp. Escobar Decl. at F142 (stating funds for which the agreement applies, but not listing the SAM Funds.)) Therefore, because Plaintiffs lack standing to allege claims on behalf of the Underlying Funds, Plaintiffs cannot state a cause of action against PGI under Counts I or II. *See Levy v. Alliance Capital Mgmt. L.P.*, No. 97 Civ. 4672 (DC), 1998 WL 744005, at *3 (S.D.N.Y. Oct. 26, 1998) (finding no liability under Section 36(b) absent allegation that defendants "were recipients of compensation or payments for investment advisory services").

Respectfully submitted,

DATED: March 4, 2010

| | |
|---|---|
| By: /s/ Brian Campbell | Phillip R. Kaplan (*admitted pro hac vice*) |
| Brian Campbell | Andrew R. Escobar (*admitted pro hac vice*) |
| WHITFIELD & EDDY P.L.C. | O'MELVENY & MYERS LLP |
| 317 Sixth Ave., Suite 1200 | 610 Newport Center Drive, Suite 1700 |
| Des Moines, Iowa 50309 | Newport Beach, California 92660 |
| Telephone: (515) 288-6041 | Telephone: (949) 760-9600 |
| Fax: (515) 246-1474 | Fax: (949) 823-6994 |
| E-mail: campbell@whitfieldlaw.com | E-mail: pkaplan@omm.com |
| | aescobar@omm.com |

*Counsel for Defendants*

---

[5] Defendants attach the Morningstar Report that is selectively quoted by Plaintiffs. (*Compare* Res. at 19 *with* Supp. Escobar Decl. at E140.) Morningstar notes that SAM Balanced Portfolio has outperformed its peers, a stark contrast to the situation in *Federated.*