UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JUDITH CURRAN and MICHAEL EARP, for the use and benefit of the Principal Funds, Inc. Strategic Asset Management (SAM) Balanced Portfolio, Principal Strategic Growth Portfolio, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Principal Management Corporation, Principal Global Investors, LLC, and Principal Funds Distributor, Inc., <br><br> Defendants. | Case No.  09-cv-00433-RP-CFB <br><br> **BRIEF IN SUPPORT OF DEFENDANTS PRINCIPAL MANAGEMENT CORPORATION AND PRINCIPAL FUNDS DISTRIBUTOR, INC.'S MOTION FOR RECONSIDERATION ON THE LIMITED QUESTION OF STANDING** <br><br> Action filed:     October 28, 2009 |

**BRIEF IN SUPPORT OF DEFENDANTS PRINCIPAL MANAGEMENT CORPORATION AND PRINCIPAL FUNDS DISTRIBUTOR, INC.'S MOTION FOR RECONSIDERATION ON THE LIMITED QUESTION OF STANDING**

Pursuant to this Court's inherent power under Federal Rule of Civil Procedure 54(b) to revise its own interlocutory orders, defendants Principal Management Corporation and Principal Funds Distributor, Inc. ("Defendants"), respectfully move the Court for reconsideration of one limited aspect of its June 8, 2010 Order ("the Order") granting in part and denying in part Defendants' motion to dismiss the amended complaint ("Motion to Dismiss"). Defendants respectfully request the Court to reconsider its ruling regarding Plaintiffs' statutory standing to sue regarding the underlying funds held by the SAM Balanced and SAM Strategic Growth Funds—funds that Plaintiffs concede they did not directly own. Defendants would not ordinarily ask the Court to revisit one of its rulings, but in this instance, because of the importance of the issue to the size of (and cost to litigate) the case, and because the issue is one of first impression

1

and was decided on the basis of a statutory interpretation that neither party had briefed, we feel that reconsideration is warranted in this unusual circumstance.

## INTRODUCTION

One of the issues raised by Defendants' Motion to Dismiss was whether Plaintiffs had statutory standing to challenge the fees charged to the underlying funds owned by the SAM Balanced and SAM Strategic Growth Funds. The SAM Funds are "fund of funds," holding shares of other mutual funds in the Principal family, the so-called "underlying funds." Plaintiffs own shares of the SAM Balanced and SAM Strategic Growth Funds, but do not own shares in the underlying funds. The question presented by that motion was whether the indirect relationship to the underlying funds, through the fund of funds vehicle, satisfies the statutory requirement of Section 36 of the Investment Company Act ("ICA") that plaintiff must be a "security holder" of the fund paying the fees that are being challenged. Defendants did not dispute that Plaintiffs' indirect connection to the underlying funds was sufficient to satisfy the constitutional requirement of "injury in fact," but did contest that this indirect connection satisfied the statutory requirement of Section 36(b).

As the Court observes in its Order, the issue is one of first impression. (Order at 9.) In their briefing, both parties—Defendants and Plaintiffs—identified cases that they considered persuasive on the question of standing. (Defendants' Brief in Support of Motion to Dismiss at 6-8; Plaintiffs' Opposition at 4-6.) But in the Order, the Court rejected these cases as inapposite and instead grounded its decision on a review of the meaning of "security holder" in 15 U.S.C. § 80a-2(36)—and, in particular, the definition of "security" in that provision—as informed by the Court's review of the legislative history of the use of "security holder" in favor of the term "shareholder" in earlier drafts of the bill. (Order at 9-12.)

2

Defendants take no issue with the Court's approach to the question, which is thorough and rigorous.  Where Defendants disagree is in the Court's interpretation of Section 80a-2(36) to broadly include any interest in a "group of securities."  Defendants respectfully submit that the portion of the definition on which the Court relied is limited to options and options-like instruments, which are not at issue here.  In fact, outside the context of options, the definition of security does not extend to indirect interests in groups of securities, such as Plaintiffs' indirect interest in the underlying funds through its ownership of the parent fund of funds.

Once the statutory definition of security is properly bounded, we believe that the outcome of the Court's further analysis must change.  While the change in the wording of Section 36(b) from "shareholder" to "security holder" is significant, its importance lies in broadening the reach of statutory standing to the different types of instruments enumerated in Section 80a-2(36) (e.g., bonds, puts, calls, certificates of deposit etc.), none of which would have been included in the term "shareholder."  However, on the question of critical importance here—whether, outside the context of options, an indirect interest in other securities meets the definition of "security"— Congress chose not to be that expansive.  The evidence of that legislative decision is the choice to include within the definition of "security" interests in groups of securities in the options context, but not more broadly.

Nor does Plaintiffs' indirect interest in the Underlying Funds satisfy any of the subparts of the dictionary definition of "holder."  Plaintiffs do not enjoy any of the incidents of ownership or possession of a security:  Plaintiffs do not have the privilege of voting, they do not receive dividends and they do not receive liquidations with regard to the Underlying Funds.  All of these rights are enjoyed by the SAM Funds themselves.  Thus, the concept of "holder" does not apply to this situation.  Definitionally, both as a matter of statutory construction of the term "security"

and based upon a lay, dictionary definition of the term "holder," Plaintiffs are not security holders of the Underlying Funds.

Defendants respectfully request that the Court reconsider its ruling on this limited issue and issue a new order that restricts Plaintiffs' standing to the two funds that they own, the SAM Balanced and SAM Strategic Growth Funds.

### RELEVANT BACKGROUND

Plaintiffs Judith Curran and Michael Earp purport to bring this derivative lawsuit on behalf of the Principal SAM Balanced Portfolio, the Principal SAM Strategic Growth Portfolio (collectively, "the SAM Funds"), and the underlying funds in each portfolio (the "Underlying Funds"). (Amended Complaint ¶1.) Plaintiffs allege that the fees associated with these mutual funds are excessive.

But Plaintiffs do not allege that they own *any* of the 18 Underlying Funds. Plaintiff Judith Curran alleges that she is a shareholder of Principal SAM Balanced Portfolio. (*Id.* ¶ 6.) Plaintiff Michael Earp alleges that he is a shareholder of Principal SAM Strategic Growth Portfolio. (*Id.* ¶ 7.) Nowhere in their original Complaint, Amended Complaint, or Opposition to Defendants' Motion to Dismiss do Plaintiffs ever claim direct ownership of the 18 Underlying Funds on whose behalf they purport to sue.

Instead, Plaintiffs claim that their indirect ownership is sufficient. Plaintiffs argue that because they own the SAM Funds, which each "invest in and hold shares" of the Underlying Funds, they have both Article III and statutory standing to sue on behalf of the Underlying Funds. (Opposition Brief at 6; Amended Complaint ¶ 9.)

On January 29, 2010, Defendants moved to dismiss Plaintiffs' claims as to the Underlying Funds for lack of standing (among other reasons). On June 8, 2010, the Court denied

the portion of Defendants' motion directed at standing.  Defendants respectfully ask the Court to reconsider its position regarding Plaintiffs' standing with regard to the Underlying Funds.

### ARGUMENT

Any order or form of decision "which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time" before the entry of a final judgment.  Fed. R. Civ. Proc. 54(b).  Accordingly, the Eighth Circuit has observed that "[t]he district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment."  *See K.C. 1986 Limited Partnership v. Reade Manufacturing*, 472 F.3d 1009, 1016-1017 (8th Cir. 2007) (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995).

On a motion under Rule 54(b), a court should reconsider its previous ruling if convinced that ruling is incorrect.  *See, e.g, Lovett v. General Motors Corp.,* 975 F.2d 518, 522 (8th Cir. 1992);  *Doctor John's Inc. v. City of Sioux City*, 456 F. Supp. 2d 1074, 1076 (N.D. Iowa 2006); *Viehweg v. Mello*, 5 F. Supp. 2d 752, 757 (E.D. Mo. 1998); *Easter v. Compucredit Corp*., 2009 WL 1286509, *1 (W.D. Ark. May 7, 2009).

### I. THE COURT'S STANDING DECISION MISCONTRUES THE ICA'S DEFINITION OF "SECURITY HOLDER"

"To determine whether a person who owns shares in a fund of funds has statutory standing to sue on behalf of the acquired fund," the Court's Order correctly begins with the relevant statutes and statutory language.  (Order at 8-9.)  Citing 15 U.S.C. § 80a-35(b), the Order notes that for a plaintiff to bring suit under Section 36(b) on behalf of a registered investment company, that plaintiff must be "a security holder of such registered investment company."  (*Id.* at 8.) Based on the statutory definition of a "security," the Order concludes that Plaintiffs' interest in the Underlying Funds qualifies as a security:

> The ICA defines "security" broadly, including "any note, stock, treasury stock, [or] security future . . . ," as well as **"any group or index of securities (including any interest therein or based on the value thereof),"** and "participation in . . . any of the foregoing." . . . Given the breadth of the statutory definition of "security," including **"any interest"** in **"any group of securities,"** it appears that Plaintiffs' financial interest in the Underlying Funds qualifies as a "security" under the ICA.

(*Id.* at 8-9 (emphasis added).)

With respect, Defendants submit that the key phrase **"any group or index of securities (including any interest therein or based on the value thereof)"** is not a freestanding description of a qualifying "security." Rather, the phrase *modifies* the earlier phrase "**any put, call, straddle, option, or privilege on any security**" and is thus limited to the context of this set of option instruments. The full definition from the ICA follows:

> "Security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, **any put, call, straddle, option, or privilege on any security (including a certificate of deposit) or on any group or index of securities (including any interest therein or**

> **based on the value thereof),** or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 80a-2 (36) (emphasis added).  This definition of security includes straight forward instruments such as stocks, bonds and certificates of deposit.  *Id.*  It also includes derivative instruments such as "any put, call, straddle, option, or privilege *on*" four enumerated categories of instruments:  (1) any security; (2) a certificate of deposit (which is in parentheses to denote that it too is a type of security); (3) any group or index of securities (including any interest therein or based on the value thereof) and (4) foreign currency.  *Id.*  And the key passage cited in the Court's Order is part of a larger passage that, read properly, refers specifically—and only—to a "put, call, straddle, option or privilege" on any "group or index of securities."  Any other interest in a "group or index of securities" does not itself constitute a security under the ICA.

  Plaintiffs' interests in the SAM Funds—which are funds of funds—do not meet that definition.  The phrase "any put, call, straddle, option, or privilege" refers to different types of option instruments that are not at issue here.  Plaintiffs do not own options in the Underlying Funds any more than a shareholder, for example, of the Magellan Fund (one of the most widely owned funds in the Fidelity family) could say that he owns an option on shares of General Motors, simply because the Magellan Fund owns those shares.

In fact, the statutory language cited in the Order suggests just the opposite: that Plaintiffs' interests in the Underlying Funds do ***not*** qualify as a security. In the entire statute—which includes more than 20 examples of instruments that qualify as securities—the only types of securities that reference a "group" of securities or "any interest therein" are the clauses that refer to types of options. Thus, Congress appears to have recognized the difference between a security and, on the other hand, a group of securities or instruments with interests in other securities. According to the maxim of *expressio unius est exclusio alterius*, when a statute contains a list of covered items, the items excluded from the list are not covered by the statute. *See, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 169 (2003) (noting that the canon of *expressio unius est exclusio alterius* applies "when the items expressed are members of an associated group or series") (internal quotations omitted). Here, the list of instruments qualifying as "securities" is not preceded by "such as," "include" or any other language indicating that the list is merely illustrative. The omission of the "group" or "interest therein" language from the rest of the statute indicates that Congress specifically elected not to use that broad language outside of the options context.

The line drawn by Congress makes sense. It includes within the definition of security a class of instruments, commonly referred to as options, that come with a variety of conventional rights commonly associated with securities—the right to buy and sell the option, the right to exercise the option and own the underlying security, etc. It excludes from the definition of security other categories of indirect interests in securities. Thus, the holder of stock of a parent cannot claim to be a security holder of the underlying subsidiary, even though the parent owns all of the stock of the subsidiary.

Once it is established that Plaintiffs' indirect interest in the Underlying Funds does not fit within the definition of "security," it is equally clear that Plaintiffs' do not enjoy the rights a "holder" of a security enjoys. Black's Law Dictionary defines "holder" as follows: "The holder of a bill of exchange, promissory note, or check is the person who has legally acquired possession of the same, by indorsement or delivery, and who is entitled to receive payment of the instrument." (Black's Law Dictionary, Rev. 4th Ed.) (citations omitted). Plaintiffs have no legal possession of securities in the Underlying Funds and no legal right to receive payment from the Underlying Funds themselves. Plaintiffs fare no better under the lay dictionary definitions cited by the Court by which the term "holder" connotes a "possessor" or "owner." (Order at 10.) Plaintiffs neither own nor possess the Underlying Funds: they cannot vote shares in the Underlying Funds, they do not have the right to receive dividends from these funds, and they could not require the Underlying Funds to pay them a proportionate distribution if the Underlying Funds were liquidated. All of these are rights held only by the SAM Balanced and SAM Strategic Growth Funds, the actual holders of the Underlying Funds.

## II. GIVEN THE AFOREMENTIONED CONSTRUCTION OF THE WORDS "SECURITY" AND "HOLDER", THE ORDER'S OTHER GROUNDS DO NOT PROVIDE AN ADEQUATE BASIS TO CONFER PLAINTIFFS WITH STANDING FOR THE UNDERLYING FUNDS

Beyond the aforementioned construction of "security" and "holder," the Order provides three other rationales for finding that Plaintiffs have standing with respect to the Underlying Funds. All three of those rationales depend on the Order's construction of the term "security holder," however, and thus cannot independently serve as the basis for the Order's ruling on standing.

First, the Order notes that Congress intentionally adopted the term "security holder" instead of the narrower "shareholder." (Order at 11.) Defendants agree this wording expands

the reach of statutory standing to the different types of instruments enumerated in Section 80a-2(36) (e.g., bonds, puts, calls, certificates of deposition etc.). But it does ***not*** expand the type of instrument that qualifies as a "security" under Section 80a-2(36). As previously discussed, the interest the shareholder of a fund of funds has in an underlying fund does not constitute a "security." Thus, while Congress gave standing to security holders—rather than merely shareholders—even that broader term does not confer standing on Plaintiffs here.

Second, the Order notes Congress' failure to amend the definition of "security" when it enabled the marketing of limited types of fund of funds. (Order at 12.) As the Order observes, "[n]otably, when Congress debated and passed the 1996 amendments allowing funds composed wholly of affiliated funds, it did not make any changes to the private right of action provision under §36(b)." (*Id.*, at 13.) Of course, the significance of the failure to amend the definition depends upon the scope of the definition in the first instance. Where the definition of security does not include indirect interests in the Underlying Funds, the failure to adjust the statutory standing definition to allow shareholders in a fund of funds to police the expenses of the Underlying Funds does not indicate a legislative intent to expand standing.

Finally, the Order cites *Gollust v. Mendell*, 501 U.S. 115, 118-21 (1991), in support of the conclusion that Plaintiffs have statutory standing. (Order at 13.) *Gollust*, however, does not address the statutory standing question presented here. *Gollust* deals with the very different question of whether a plaintiff who *initially* has statutory standing can *subsequently lose standing* because of later events, including (as in *Gollust* itself) actions by the defendant to merge itself out of existence. See *DiLorenzo v. Edgar,* 2004 U.S. Dist. LEXIS 4991 (D. Del. Mar. 24, 2004); *Heine v. Soros*, 1994 U.S. Dist. LEXIS 15812 (S.D.N.Y. Nov. 3, 1994). The *Gollust* Court held "that a plaintiff, who properly 'instituted [a § 16(b) action as] the owner of [a]

security of the issuer,' may continue to prosecute the action after his interest in the issuer is exchanged in a merger for stock in the issuer's new corporate parent." 501 U.S. at 118.  It was in that context that, as this Court's Order notes, the Supreme Court held that "[t]he only textual restrictions on the standing of a party to bring suit under § 16(b) are that the plaintiff must be the 'owner of [a] security' of the 'issuer' at the time the suit is 'instituted.'" (Order, at 13.)  The Supreme Court also questioned "whether the merger was orchestrated for the express purpose of divesting plaintiff of standing." 501 U.S. at 120.

*Gollust* does not govern the instant standing question.  Most importantly, this is not a situation in which Plaintiffs met the statutory standing requirements initially but then subsequently failed them because of later events.  There are no changed circumstances here— Plaintiffs simply *never* satisfied the statutory definition of a "holder" of a "security" in the Underlying Funds.  In addition, this case does not involve any of the background concerns addressed in *Gollust*.  Defendants here have not engaged in tactical conduct to destroy Plaintiffs' standing.  Likewise, there is no similar risk that unless standing is read broadly to include Plaintiffs' right to contest the fees paid by the Underlying Funds, no one would remain who could bring that action.  There are many shareholders of the Underlying Funds who do qualify as "security holders" under the standing definition of Section 36(b) and there is no need to leverage the standing of these Plaintiffs to include funds that they do not own in order to ensure that there will be persons with standing to enforce the requirements of the statute.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant reconsideration of its Order concerning Plaintiffs' standing to sue on behalf of the Underlying Funds and issue a new order limiting Plaintiffs' standing to sue under ICA Section 36(b) to the

two funds that Plaintiffs' own, the SAM Balanced and SAM Strategic Growth Funds.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: June 30, 2010 | By: /s/ Phillip R. Kaplan<br>Phillip R. Kaplan |

Phillip R. Kaplan (*admitted pro hac vice*)
O'MELVENY & MYERS LLP
610 Newport Center Drive, Suite 1700
Newport Beach, California 92660
Telephone: (949) 760-9600
Fax: (949) 823-6994
E-mail: pkaplan@omm.com

Brian Campbell
WHITFIELD & EDDY P.L.C.
317 Sixth Ave., Suite 1200
Des Moines, Iowa 50309
Telephone: (515) 288-6041
Fax: (515) 246-1474
E-mail: campbell@whitfieldlaw.com

*Counsel for Defendants Principal Management Corporation and Principal Funds Distributor, Inc.*