IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| JUDITH CURRAN and MICHAEL EARP, for the use and benefit of the Principal Funds, Inc. Strategic Asset Management (SAM) Balanced Portfolio, Principal Strategic Growth Portfolio, et al., | * * * * * * | 4:09-cv-00433 RP-CFB |
| Plaintiffs, | * * |  |
| v. | * * |  |
| PRINCIPAL MANAGEMENT CORPORATION, LLC, and PRINCIPAL FUNDS DISTRIBUTOR, INC., | * * * * |  |
| Defendants. | * * | ORDER |

Before the Court is a motion for reconsideration filed on June 30, 2010 by Principal Management Corporation ("PMC") and Principal Funds Distributor, Inc. ("PFD") (collectively "Defendants"). Clerk's No. 43. Judith Curran and Michael Earp (collectively "Plaintiffs") filed a response on July 21, 2010, and Defendants filed a reply on July 28, 2010. Clerk's Nos. 47, 48. The Court held a hearing on this motion on January 13, 2011. Clerk's No. 74. The matter is fully submitted.

On June 8, 2010, the Court issued an order on Defendants' motion to dismiss Plaintiffs' amended complaint (hereinafter "the Order"). Clerks' No. 38. Defendants move, pursuant to Federal Rule of Civil Procedure 54, for reconsideration of Section II(B) of the Order, which dealt with the issue of "statutory standing" under § 36(a) of the Investment Companies Act ("ICA"). *See* Defs.' Br. in Supp. of Defs.' Mot. for Reconsideration (hereinafter "Defs.' Reconsideration Br.") at 1 (Clerk's No. 43-1).

Based on the parties' submissions and oral arguments, the Court is convinced that its interpretation of the relevant statutory language in Section II(B) of the Order was clearly erroneous and that leaving that section unchanged would work a manifest injustice on Defendants.  *See Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992).  Therefore, "Defendants' Motion for Reconsideration on the Limited Question of Standing" (Clerk's No. 43) is GRANTED.  The Court VACATES Section II(B) of its June 8, 2010 order (Clerk's No. 38) and replaces it with the following Section II(B).  To the extent that any conclusions or other general provisions in the Order contradict this replacement section, the latter is controlling.

I.  REPLACEMENT SECTION II(B):

*The Scope of § 36(b)'s Private Right of Action–Statutory Standing*

In this case, Plaintiffs are seeking—among other things—to assert a private right of action for a breach of duty in connection with fees paid by the Underlying Funds.  Plaintiffs allege that they are shareholders of SAM Funds but do not allege that they own shares in the Underlying Funds.  Am. Compl. ¶¶ 6–7.  Defendants argue that "Plaintiffs lack [statutory] standing to bring this action on behalf of, or otherwise recoup the fees charged to, the eighteen Underlying Funds because they have alleged only that they are holders of the SAM Funds."  Br. in Supp. of Defs.' Mot. to Dismiss the Am. Compl. (hereinafter "Defs.' Br.") at 7 (Clerk's No. 22); *see also* Defs.' Reply Br. in Supp. of Defs.' Mot. to Dismiss the Am. Compl. (hereinafter "Defs.' Reply") at 1–3 (Clerk's No. 28); Tr. at 14–19.[1]  Although Defendants frame their arguments in terms of "standing," Defendants do not dispute that Plaintiffs have satisfied the

---

[1] Unless otherwise indicated, the Court's citations to "Tr." refer to the March 16, 2010 hearing on Defendants' motion to dismiss.  Clerk's No. 37.

Article III standing requirements.[2] *See* Tr. at 14. Rather, Defendants argue that Plaintiffs do not have a private right of action pursuant to § 36(b) of the ICA.

Section § 36(b) of the ICA provides, in relevant part:

> For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection . . . by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. . . .

15 U.S.C. § 80a-35(b).

The relevant "registered investment compan[ies]" are the Underlying Funds.[3] *See* Defs.' Reply at 2; Pls.' Resp. Br. at 6. Therefore, in order to bring an action for breach of fiduciary duty in connection with fees paid by the Underlying Funds, Plaintiffs must be "security holder[s]" of the Underlying Funds. *See* 15 U.S.C. § 80a-35(b). Plaintiffs argue that they are

---

[2] Therefore, Plaintiffs' arguments regarding Article III standing are inapposite. *E.g.*, Pls.' Resistance to Defendants Principal Mgmt. Corp. & Principal Funds Distrib., Inc's Mot. for Reconsideration on the Limited Question of Standing (hereinafter "Pls.' Reconsideration Br.") at 5 (Clerk's No. 47).

[3] It appears that, technically, PFI is the "investment company" that is registered with the SEC and that each Underlying Fund is technically a "series." *See* Defs.' Reply at 2. However, Plaintiffs do not appear to dispute that the Underlying Funds are the relevant "registered investment companies"; indeed, they assert that "each of the Underlying Funds . . . is a registered investment company advised by Defendants." Pls.' Resp. Br. at 6. At any rate, the Court agrees with Defendants that each Underlying Fund should be treated as a "registered investment company" for the purposes of applying § 36(b) because they are, for all practical purposes, separate mutual funds. *Cf. In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d 580, 588–90 (D. Md. 2007); *see also* Hr'g Tr. 20:22–24 January 13, 2011 (pagination as shown in the rough draft provided to the Court by the court reporter on January 21, 2011).

"security holders" in the Underlying Funds because they "hold shares of the Underlying Funds through their fund of funds."[4] *See* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Am. Compl. (hereinafter "Pls.' Resp. Br.") at 5 (Clerk's No. 25).  The issue raised by the parties—i.e., whether a person who owns shares in a fund of funds qualifies as "a security holder of" funds acquired by that fund of funds—is a question of first impression.

The term "security holder" is not defined in the ICA.  The ICA does, however, define the term "security."  According to that definition,

> "Security" means any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security (including a certificate of deposit) or on any group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 80a-2(36).

In their Amended Complaint, Plaintiffs allege that they "are shareholders of the SAM Funds."  Am. Compl. ¶ 13.  Plaintiffs do not allege that they own "any note, stock, treasury stock, security future, bond, debenture, evidence of indebtedness, certificate of interest or

---

[4] Plaintiffs also argue that "Section 36(b) does not distinguish owners who hold shares through a first level fund or through a fund of funds."  Pls.' Resp. Br. at 5.  However, at the time § 36(b) was enacted, funds of funds like the SAM Funds were not permitted under the ICA.  *See* Act of Dec. 14, 1970, Pub. L. 91-547, 84 Stat. 1413, 1417–19 (enacting § 36(b)); Act of Oct. 11, 1996, Pub. L. 104-290, 110 Stat. 3426, 3426–27 (enacting 15 U.S.C. § 80a-12(d)(1)(G), which permits the establishment of funds of funds, such as the SAM Funds).  Therefore, the fact that Congress did not distinguish between "first level fund[s]" and funds of funds in § 36(b) is neither surprising nor dispositive.

participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights" in the Underlying Funds. *See* 15 U.S.C. § 80a-2(36). Nor do they allege that they own "any put, call, straddle, option, or privilege" on such instruments or on any group of such instruments. *See id.* They also do not allege any facts sufficient to support an inference that the interest that Plaintiffs claim in the Underlying Funds is an "interest or instrument commonly known as a 'security.'" *See id.* In their brief, however, Plaintiffs argue that their interest in the Underlying Funds qualifies as an "investment contract."[5] Pls.' Reconsideration Br. at 6–7 (citing *Funds of Funds, Ltd. v. Arthur Anderson & Co.*, 545 F. Supp. 1314, 1347–48 (S.D.N.Y. 1982).

> The term "investment contract" has been interpreted by the Supreme Court to include those instruments that, although not specifically named in the securities statutes, function as securities and thus require regulation. Specifically, the Supreme Court held . . . that the term "investment contract" (under federal securities laws) "means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 485 F. Supp.2d 631, 636 (D. Md. 2007) (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946)). Plaintiffs argue that their interest in the Underlying Funds qualify as an "investment contract" under this definition because "the 'fortunes' of the SAM Fund shareholders are interwoven with and completely dependent upon the efforts and success of the investments in the Underlying Funds." Pls.' Reconsideration Br. at 7. However, even if this is so, Plaintiffs have not identified

---

[5] In support of this conclusion, Plaintiffs also cite an SEC Rule that the D.C. Circuit has found to be invalid. *See* Pls.' Reconsideration Br. at 7 (citing 17 C.F.R. § 275.203(b)(3)); *Goldstein v. S.E.C.*, 451 F.3d 873 (2006).

any agreement or instrument between themselves and the Underlying Fund which functions as a security—let alone pled facts sufficient to allow a reasonable inference that such an agreement or instrument exists. Plaintiffs aver that "[s]hareholders of the SAM Funds even hold the exact same contract as the direct shareholders of the Underlying Funds," but the only contract they cite is one to which Plaintiffs are not a party. *See id.* (citing Am. Compl. Ex. 1 (showing a contract between Principal Funds, Inc. and Principal Management Corporation)). Therefore, the Court concludes that Plaintiffs do not hold securities in the Underlying Funds in the form of investment contracts. Because this is the only type of statutorily-defined "security" claimed by Plaintiffs, the Court further concludes that Plaintiffs do not hold any "securities" in the Underlying Funds.[6]

Additionally, the Court does not agree with Plaintiffs' assertion that they "*hold* shares of the Underlying Funds through their fund of funds." *See* Pls.' Resp. Br. at 5 (emphasis added). The term "holder" is not defined in the ICA, but a review of several dictionaries published in the late 1960s indicates that the term "holder," when referring to a person, most commonly connotes a "possessor" or "owner." *See* Webster's Third New International Dictionary 1079 (1969) (listing the primary definition of "holder" as "one that holds something as a (1): possessor; owner . . . ."); Am. Heritage Dictionary of the English Language 62 (1969) (defining "holder" as: "1. A person who holds something . . . 3. One who possesses something; an owner. . . 4. *Law*. One who legally possesses and is entitled to the payment of a check, bill, or promissory note"); Black's Law Dictionary 576 (4th ed. 1968) (defining "holder" as "1. something to hold a thing with. 2. one who has the ownership, possession, or use of something; an owner; a tenant. 3. *Law*. one who has a legal right to enforce a negotiable instrument"). Plaintiffs do not allege that they

---

[6] In light of this clear statutory language, the Court does not find Plaintiffs' policy-based arguments persuasive. *E.g.*, Pls.' Reconsideration Br. at 4.

directly own or possess shares of the Underlying Funds. Additionally, Plaintiffs "do not enjoy any of the incidents of ownership or possession" of any security in the Underlying Funds because they "do not have the privilege of voting, they do not receive dividends and they do not receive liquidations with regard to the Underlying Funds." Defs.' Reconsideration Br. at 3; *see also id*. at 9. Therefore, Plaintiffs do not "hold" shares of the Underlying Funds.

Because Plaintiffs do not hold any "securities" in the Underlying Funds, they do not qualify as "security holder[s]" of the Underlying Funds. Therefore, they are not entitled to bring claims regarding the fees charged by the Underlying Funds. *See* 15 U.S.C. § 80a-35.

## II.  CONCLUSION

For the foregoing reasons, Plaintiffs' claims challenging the fees charged by the Underlying Funds are DISMISSED.

IT IS SO ORDERED.

Dated this __24th__ day of January, 2011.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT