UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JUDITH CURRAN and MICHAEL EARP, for the use and benefit of the Principal Funds, Inc. Strategic Asset Management (SAM) Balanced Portfolio, Principal SAM Strategic Growth Portfolio, *et al*., <br><br> Plaintiffs, <br><br> v. <br><br> PRINCIPAL MANAGEMENT CORPORATION, and PRINCIPAL FUNDS DISTRIBUTOR, INC. <br><br> Defendants. | Case No. 4:09-cv-00433-RP-CFB |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER
THE COURT'S ORDER ON STATUTORY STANDING REGARDING THE
UNDERLYING FUNDS AND AMEND THE PLEADINGS OR, IN THE ALTERNATIVE,
REQUEST FOR PERMISSION FOR AN INTERLOCUTORY APPEAL**

TABLE OF CONTENTS

I. BACKGROUND FACTS ........................................................................................... 3

II. ARGUMENT ........................................................................................................... 6

    A. The Big Picture .......................................................................................... 7

        1. Article III Standing Is Relevant. .............................................. 7

        2. The Relevant Inquiry In A Section 36(b) Case Should
           Focus On The "Compensation Or Payments Paid By Such
           Registered Investment Company." .......................................... 8

           a. Follow the money Part I: Who paid the
              compensation received by the investment adviser? ..................... 8

           b. Follow the money Part II: Who can bring a Section
              36(b) action? .......................................................................... 10

              (i) The SAM Shareholders Are Authorized To
                  Bring A 36(b) Action *On Behalf Of* The
                  SAM Funds. ................................................................ 11

              (ii) Although The SAM Funds Are Security
                    Holders Of The Underlying Funds,
                  Investment Companies Themselves Are Not
                  Authorized To Bring Claims Under Section
                  36(b), A Right Reserved For the
                  Shareholders Of the Investment Companies. .................. 11

III. ALTERNATIVE RELIEF REQUESTED ................................................................. 13

IV. CONCLUSION ........................................................................................................ 15

TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ........................................................................... 14

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ........................................................................ 6, 7

*Carter v. Am. Bus Lines, Inc.*,
   22 F.R.D. 323 (D.Neb. 1958) ............................................................................ 2

*Curran v. Principal Mgmt. Co.*,
   No. 4:09-cv-00433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011) ....................... 1

*Daily Income Fund, Inc. v. Fox*
   464 U.S. 523 n.11 (1984) ................................................................................. 12

*DeLorenzo v. Fed. Deposit Ins. Corp.*,
   268 F. Supp. 378 (S.D.N.Y. 1967) ..................................................................... 2

*Foman v. Davis*,
   371 U.S. 178 (1962) ........................................................................................... 3

*In re Am. Mut. Funds Fee Litig.*,
   No. 04-5593, 2009 WL 5215755 (C.D. Cal. Dec, 28, 2009) .............................. 12

*Lovett v. Gen. Motors Corp.*,
   975 F.2d 518 (8th Cir. 1992) .............................................................................. 1

*Massachusetts v. EPA*,
   549 US. 497 (2007) ............................................................................................ 7

*Miller v. Cent. Chinchilla Group, Inc.*,
   494 F.2d 414 (8th Cir. 1974) ........................................................................... 13

*S.B.L. ex rel. T.B. v. Evans*,
   80 F.3d 307 (8th Cir. 1996) ............................................................................. 14

*United States v. Carr*,
   66 F.3d 981 (8th Cir. 1995) ............................................................................. 14

**Statutes**

15 U.S.C. § 80a-35(b) ..................................................................................... 8, 10, 12

29 U.S.C. § 1292(b) ............................................................................................... 14

**Rules**

Federal Rule of Appellate Procedure 5(a)(3)..................................................................... 13

Federal Rule of Civil Procedure 15(a)(2) ........................................................................ 2

Federal Rule of Civil Procedure 54(b)............................................................................. 1

**Other Authorities**

6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL
    PRACTICE AND PROCEDURE § 1475 (3d ed. 2010).................................................... 2

Plaintiffs respectfully request that the Court reconsider its January 24, 2011 Order

granting Defendants' Motion for Reconsideration on the Limited Question of Standing (Doc. No.

76), *Curran v. Principal Mgmt. Co.*, No. 4:09-cv-00433, 2011 WL 223872 (S.D. Iowa Jan. 24,

2011)

 ("MFR Order"), pursuant to its inherent power to revise an interlocutory order prior to the entry

of judgment pursuant to Federal Rule of Civil Procedure 54(b).  Plaintiffs make this request in an

effort to avoid a manifest injustice regarding this issue of first impression. "[A] district court may

properly depart from an earlier holding if convinced that it is clearly erroneous and would work a

manifest injustice.  When a district court is convinced that it incorrectly decided a legal question

in an interlocutory ruling, the district court may correct the decision to avoid later reversal."

*Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992).

Specifically, Plaintiffs request that the Court review its order because of two interrelated

errors, one of fact and one of law.  First, there was an error of critical fact in Defendants'

representation that the SAM Fund shareholders do not pay compensation to the advisers of the

Underlying Funds.  When the Court asked counsel for Defendants whether the shareholders of

the SAM Funds pay any compensation to the advisers for the Underlying Funds at the hearing on

its motion to reconsider, counsel responded, "No. My answer to that is no."  (Transcript of

March 16, 2010 Hearing at 18:6-9 (Docket No. 37) ("Hr'g Tr.").)  But, in fact, the SAM Fund

shareholders *do* pay compensation to the advisers of the Underlying Funds.  *See* Section *infra* I.

Second, Defendants led this Court into an error of law in the interpretation of section 36(b) of the

Investment Company Act.  The dispositive question here—as a matter of statutory language and

common sense—is not the meaning of "security" or "holder" but, rather, *to whom the investment

advisory compensation is paid*.  Here, the investment advisory compensation that the SAM Fund

shareholders pay includes compensation paid to the advisers of the Underlying Funds.  And hence, the SAM Fund shareholders are proper parties to bring a suit against the advisers of the Underlying Funds.  Plaintiffs submit that Defendants have led the Court (as well as the Plaintiffs) down an unnecessarily convoluted path that missed the forest for the trees.

Because these arguments could be considered amendments to Plaintiffs' prior briefing, Plaintiffs request permission under Federal Rule of Civil Procedure 15(a)(2) to amend their pleadings on this issue to supplement the briefing with the arguments raised in this brief.  *See DeLorenzo v. Fed. Deposit Ins. Corp.*, 268 F. Supp. 378, 382 (S.D.N.Y. 1967); *Carter v. Am. Bus Lines, Inc.*, 22 F.R.D. 323, 325-326 (D. Neb. 1958).  Pursuant to Rule 15, the court should "freely give leave when justice so requires."  Further, "allowing the trial judge to exercise discretion to permit the amendment of motions under appropriate circumstances is in keeping with the liberal amendment policy of Rule 15(a) and in the absence of prejudice to the adverse party will help it insure that the case is decided on the merits."  6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1475, p. 636 (3d ed. 2010).  The limited issue before the Court is one of first impression for which the Court has allowed Defendants to provide additional briefing through Defendants' motion to reconsider. Over the course of the filings and hearings, the parties and Court have honed their rationale, as is want with issues of first impression where there is very little previous guidance upon which to draw.  It is well established that,

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party, . . . etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  Plaintiffs believe they can further elucidate this important issue for the Court, and Defendants will suffer no prejudice given the early stage of this case and the fact that they will have a full opportunity to respond to these arguments in their resistance.   To deny Plaintiffs the opportunity to raise these arguments now, when the effect of the Court's ruling denies SAM shareholders the right to bring these claims on their own behalf, would be greatly prejudicial and result in a manifest injustice, especially given the fact that the SAM Funds own significant numbers of shares of the Underlying Funds.  *See infra* Section I. Indeed, in some instances, the SAM Funds own such a large percentage of shares of the Underlying Funds that the SAM Funds are considered a "control person" of those Underlying Funds.

## I.    BACKGROUND FACTS

With respect to the SAM Funds and the Underlying Funds, Defendants admit the following facts:

- The SAM Funds invest in the Institutional Class shares of the Underlying Funds, Def. Mtn. to Dismiss at 24 (Docket No. 19-1) ("Def. MTD");

- The SAM Funds hold securities in the Underlying Funds, Def. Mtn. for Reconsideration at 9 (Doc. No. 43-1)("Def. MFR"), and are the shareholders of the Underlying Funds, Tr. At 17:9-10; and

- The SAM Funds enjoy the rights of ownership of the Underlying Funds.  *Id.*

Not only do the SAM Funds hold securities in the Underlying Funds and enjoy the rights of ownership, but in 2008 and 2009, the SAM Funds also held a large enough portion of the shares of several of the Underlying Funds to be considered "control persons" of those funds, *see, e.g.*, Principal Funds, Inc. March 1, 2009 Statement of Additional Information ("SAI") at p. 40, Declaration of Tana Lin In Support of Plaintiffs' Motion to Reconsider The Court's Order On Statutory Standing Regarding The Underlying Funds and Amend The Pleadings Or, In The

Alternative, Request For Permission For An Interlocutory Appeal ("Lin Decl."), Ex. 1 ("a

person who owns more than 25% of the voting securities of a fund controls the fund"):

| SAM Ownership of Underlying Funds | 2008 | 2009 |
|---|---|---|
| Government & High Quality Bond *(FKA Mortgage Securities)* | 40.61% | 28.17% |
| Income | 35.47% | 31.39% |
| Short-Term Income | 29.26% | |
| MidCap Stock *(NKA MidCap Blend)* | 26.18% | |

March 1, 2008 SAI at pp. 40, 43, 44 (Lin Decl. Ex. 2); March 1, 2009 SAI at p. 40 (Lin Decl. Ex.

1). In addition, the SAM Balanced and Strategic Growth Portfolios own a significant amount of

the Institutional Class Shares of the following Underlying Funds:

| Underlying Fund (I) Shares | SAM Balanced % Ownership | | SAM Strategic Growth % Ownership | |
|---|---|---|---|---|
| | 2008 | 2009 | 2008 | 2009 |
| Disciplined LargeCap Blend | 10.10% | 8.37% | 6.91% | 6.72% |
| Diversified International | 24.92% | 25.70% | 18.69% | 18.75% |
| Equity Income | 34.82% | 32.42% | 22.70% | 20.44% |
| Gov. & High Quality Bond *(FKA Mortgage Securities)* | 47.04% | 44.60% | | |
| High Yield | 26.87% | 17.89% | 11.72% | 8.19% |
| Income | 45.94% | 43% | | |
| International Emerging Markets | 10.72% | 8.30% | 7.94% | 5.74% |
| LargeCap Growth | 17.85% | 15.65% | 11.31% | 9.80% |
| LargeCap Growth II | 20.39% | 17.30% | 12.86% | 10.75% |
| LargeCap Value III | 10.08% | 9.59% | 7.02% | 7.23% |
| MidCap Blend *(FKA MidCap Stock)* | 30.09% | 24.72% | 25.30% | 19.72% |
| Preferred Securities | 12.02% | 11.69% | | |

| Underlying Fund (I) Shares | SAM Balanced % Ownership | | SAM Strategic Growth % Ownership | |
|---|---|---|---|---|
| | 2008 | 2009 | 2008 | 2009 |
| Capital Appreciation (FKA West Coast Equity) | 32.96% | 32.87% | 25.05% | 23.86% |
| Real Estate Securities | 7.94% | 6.25% | 5.20% | |
| Short-Term Income | 35.36% | 19.78% | | |
| SmallCap Growth | 31.95% | 32.91% | 22.62% | 22.65% |
| SmallCap Value | 17.52% | 16.50% | 12.41% | 11.39% |

March 1, 2008 SAI at pp. 47, 48, 50, 51, 54, 55, 57, 63-66, 68, 69, 72, 74 (Lin Decl. Ex. 2);

March 1, 2009 SAI at pp. 49-52, 54, 55, 57, 62, 64, 68, 69, 75, 76, 84, 88, 90, 93 (Lin Decl. Ex. 1).[1]

In their Amended Complaint, Plaintiffs allege that the shareholders of the SAM Funds pay four levels of fees. There are two levels relating to the SAM Funds, one paid to Defendant Principal Management Company and one paid to the sub-adviser of the SAM Funds. And there are two levels relating to the Underlying Funds, one paid to Defendant Principal Management Company and one paid to the sub-adviser of each Underlying Fund.

| The Four Levels of Fees | |
|---|---|
| (1) Fees Paid to Principal Management Company | Fees which relate to services provided to the SAM funds |
| (2) Fees Paid to the sub-adviser of the SAM funds | |
| (3) Fees paid to Principal Management Company | Fees which relate to services provided to the Underlying Funds |
| (4) Fees paid to the sub-advisers of the underlying funds | |

(See Compl. ¶ 40.) At the hearing on Defendants' motion for reconsideration, the Court asked counsel for Defendants whether a holder of the SAM Funds pays any compensation to the

---

[1] Data is only publicly available for those funds with more than 5% ownership.

advisers for the Underlying Funds, to which counsel responded, "No. My answer to that is no." (Hr'g Tr. at 18:6-9.)  However, on a motion to dismiss, the court must take the plaintiff's factual allegations as true and draw all inferences *in favor* of a plaintiff.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009).  Further, Defendants' own documents and filings belie their counsel's response as, for example, its prospectuses list among "expenses that are deducted from [the SAM] Fund assets" the "Acquired Fund (Underlying Fund) Operating Expenses."[2]  *See, e.g.*, March 1, 2009 Principal Funds, Inc. Class A, B, and C Shares Prospectus at 15, 19 (Lin Decl. Ex. 3).   The operating expenses of the Institutional Class shares of the Underlying Funds consist primarily of management fees,[3] with "other expenses" comprising only between one to five basis points of the expenses for the majority of the Underlying Funds.  *See, e.g.*, March 1, 2009 Principal Funds, Inc. Institutional Class Shares Prospectus at 9, 11, 18, 24, 36, 38, 51, 63, 75, 85, 87, 91, 99, 135, 139, 154, 158, 162, 164  (Lin Decl. Ex. 4).

## II.   ARGUMENT

The Court's MFR Order renders the shareholders of the SAM Funds powerless to pursue an action on their own behalf for injuries they have in fact suffered.  This is a manifest injustice, because the SAM Funds own significant shares of the Underlying Funds—certainly more than the majority of the direct shareholders of the Underlying Funds and, in a few instances, enough shares to be controlling persons with regard to those Underlying Funds.  But under the Court's MFR Order, the shareholders of the SAM Funds must seek out shareholders of each of the eighteen Underlying Funds to bring a claim for them or resort to a state court derivative claim for which they may be unable to recover for the same time period covered by the Amended

---

[2] Plaintiffs had not included this information in earlier filings because of the presumption, and Defendants had not disputed this fact in any of their Rule 12(b)(6) motion briefing.

[3] Management fees are the same as investment advisory fees.  Therefore, the terms are used interchangeably in this brief.

Complaint in this case, given the look-back period of the ICA or the time period that would be covered by a new state court case. Advisers should not be able to escape the reach of shareholders of their funds by adding in a layer of fees for which damages cannot be sought by the shareholders who actually were injured. This simply was not the intent of Congress when it enacted section 36(b).

## A.    The Big Picture

### 1.    Article III Standing Is Relevant.

Plaintiffs will not repeat what they wrote in their earlier briefing on the issue of Article III standing but they respectfully disagree with the Court's position that Article III arguments are inapposite. MFR Order at *1 n.2. To the contrary, the Eighth Circuit has held that "[t]he heart of standing [ ] is the principle that in order to invoke the power of the federal court, a plaintiff must present a 'case' or 'controversy' within the meaning of Article III of the Constitution." *Braden*, 588 F.3d at 591. Indeed, "'the gist of the question of standing' is whether [a plaintiff has] 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" *Id.* at 593 (quoting *Massachusetts v. EPA*, 549 US. 497, 517 (2007)). A plaintiff's standing often tracks her cause of action as "the question of whether [she] has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant him relief." *Braden*, 588 F.3d at 591. In any event, Defendants "do not dispute that Plaintiffs' indirect connection to the underlying funds was sufficient to satisfy the constitutional requirement of 'injury in fact.'" *See* Def MFR at 2.

>   **2.**      **The Relevant Inquiry In A Section 36(b) Case Should Focus On The "Compensation Or Payments Paid By Such Registered Investment Company."**

In addition to Article III standing, Plaintiffs meet all statutory requirements for standing under section 36(b).

>   **a.**      **Follow the money Part I: Who paid the compensation received by the investment adviser?**

Defendants have led the Plaintiffs and the Court down a path that has focused on the term "security holder."  Plaintiffs, however, submit that under the plain language of the statute, the appropriate starting point of the standing inquiry is the receipt of compensation that is paid by a registered investment company or its shareholders.  The first part of Section 36(b) provides that

>   the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to *the receipt of compensation for services*, or of payments of a material nature, *paid by such registered investment company, or by the security holders thereof*, *to such investment adviser or any affiliated person of such investment adviser*.

15 U.S.C. § 80a-35(b) (emphasis added).  The players in this case map onto the statutory language as follows:

>   the investment adviser [***Principal Management Corporation, LLC ("PMC"***] of a registered investment company [***the Principal SAM Balanced Portfolio and the Principal SAM Strategic Growth Portfolio (together, the "SAM Funds")***]] shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company [***the SAM Funds***], or by the security holders thereof [***Plaintiffs***], to such investment adviser [***PMC***] or any affiliated person of such investment adviser.

The second through fourth layers of fees that the SAM Funds pay are compensation paid to affiliated persons, except that in the case of the third layer of fees, the affiliated person happens to again be PMC.  Of course, the third layer of fees is the only layer that remains disputed.

For the purpose of a Rule 12(b)(6) motion, the court must accept as true the fact that the SAM Funds and its shareholders paid the third layer of compensation to the adviser of the

Underlying Funds, PMC.  In any event, Plaintiffs provide evidence that PMC, the adviser of the Underlying Funds, did, in fact, receive compensation for investment advisory services for the Underlying Funds from the assets of the SAM Funds and its shareholders by "deduct[ing] from [the SAM] Fund assets" the "Acquired Fund (Underlying Fund) Operating Expenses." [4]  Because the operating expenses predominantly consist of management fees, PMC received compensation from the SAM Funds for investment advisory services it provided to the Underlying Funds. Under the plain language of § 36(b), therefore, PMC owed a fiduciary duty to the SAM Funds with respect to its receipt of that compensation.

Defendants have attempted to limit the fiduciary duty to the fees that the SAM shareholders have "paid directly."  Def. MTD at 8.  But Congress did not insert any limiters of any kind on the term "compensation" in the statute.  Nowhere does the word "direct" appear in section 36(b).  Indeed, the fact that an adviser has a duty with respect to payments made to any affiliated persons—and not just payments made directly to the adviser itself—shows the intent was to protect all compensation paid for management services, regardless of whether that payment was made directly or indirectly.[5]

The statutory history of section 36(b) supports this reading.  At the time Congress was amending the Investment Company Act, it was concerned with updating the Act to "provide additional safeguards and protections to public investors," H.R. REP. NO. 91-1382, at 1 (1970), and added a fiduciary duty dealing pointedly with the receipt of compensation.  Among the particular concerns that Congress had was the creation of new fund holding companies whose investment portfolios would consist either entirely or largely of securities of other investment

---

[4] *See supra* Section I.

[5] As noted above, the operating expenses of the Underlying Funds are directly deducted from the SAM Funds' assets, *i.e.*, from what is owned by the Plaintiffs.  In that sense, Plaintiffs are directly paying fees or compensation to the Underlying Funds

companies (*i.e.*, fund of funds). *Id.* at 10. Congress specifically noted the problem with the

"layering of costs to investors in terms of duplication of administrative expenses, sales charges

and advisory fees" that led the Securities and Exchange Commission to actually urge that fund

holding companies be prohibited. *Id.* By adding section 36(b), Congress intended shareholders

of the registered investment company[6] to play a key role in enforcing the fiduciary duty of the

investment adviser with respect to the receipt of compensation paid by the investment company.

*Id.* at 7.

        **b.**        **Follow the money Part II: Who can bring a Section 36(b) action?**

The second part of Section 36(b) provides that

> [a]n action may be brought under this subsection by the Commission, or *by a security holder of such registered investment company* on behalf of such company, *against such investment adviser, or any affiliated person* of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, *for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.*

15 U.S.C. § 80a-35(b) (emphasis added). As discussed above, the term "such compensation or

payments paid by such registered investment company or by the security holders thereof," as

applied to the facts of this case, encompasses the third level of fees that the SAM Funds paid

PMC for investment advisory services to the Underlying Funds. As Plaintiffs have also shown,

"such registered investment company" refers in this case to the SAM Funds. *See supra* p. 8.

Because no one disputes that Plaintiffs are "security holders[s]" of the SAM, Plaintiffs are

"security holder[s] of such registered investment company."

---

[6] As a mutual fund is a registered investment company, those terms are used interchangeably.

**(i)      The SAM Shareholders Are Authorized To Bring A 36(b) Action *On Behalf Of* The SAM Funds.**

As "security holder[s] of such registered investment company," Plaintiffs are proper parties to bring a suit for a breach of fiduciary duty with respect to the compensation paid by the SAM Funds for investment advisory services to the Underlying Funds.  And the SAM Funds ("such registered investment compan[ies]") are the mutual funds *on whose behalf* Plaintiffs bring their suit.  Accordingly, Plaintiffs clearly do have a private right of action under Section 36(b) with regard to the compensation the SAM Funds paid for services to the Underlying Funds.

Thus, even under the conclusion the Court reached in its MFR Order—that a "security holder" only encompasses a *direct* shareholder in a mutual fund, and the Plaintiffs were direct shareholders of the SAM Funds—Plaintiffs have standing to assert all of their claims.  Under section 36(b), PMC and every affiliate of PMC to whom SAM Funds' shareholders pay direct or indirect compensation is under a fiduciary duty to the SAM Funds and the SAM Funds' *direct* shareholders with respect to that compensation.  In this case, therefore, the adviser of the Underlying Funds—PMC itself —is under a fiduciary duty to the SAM Funds and the SAM Funds' direct shareholders.  And because the statute allows *direct* shareholders in the SAM Funds to bring suit against PMC and every affiliated person of PMC, as it is under a fiduciary duty with respect to compensation, *direct* shareholders in the SAM Funds may bring suit against PMC as the adviser of the Underlying Funds.

**(ii)     Although The SAM Funds Are Security Holders Of The Underlying Funds, Investment Companies Themselves Are Not Authorized To Bring Claims Under Section 36(b), A Right Reserved For the Shareholders Of the Investment Companies.**

It also is undisputed that the SAM Funds are security holders of the Underlying Funds. Under the plain reading of the text of language of Section 36(b), it is only the shareholders of the

SAM Funds, and not the SAM Funds *themselves* who are authorized to bring an action over the compensation paid to the adviser of the Underlying Funds.  The right to bring such an action was bestowed only upon "*a security holder* of such registered investment company *on behalf of such company*."  15 U.S.C. § 80a-35(b) (emphasis added).  In *Daily Income Fund, Inc. v. Fox*, the Supreme Court noted that "[t]he legislative history of 36(b) makes clear that Congress intended the perhaps unique 'right of a corporation' established by 36(b) to be asserted by the company's security holders and not by the company itself."  464 U.S. 523, 535 n.11 (1984).  In fact, the version of ICA amendments that the Senate ultimately passed rejected the industry's suggestion that the investment company itself be expressly authorized to bring suit.  *Id.* at 538-39.  Congress instead gave the power to the shareholders of the investment companies to "fully vindicate[ ]" the companies' rights under the statute.  *Id.* at 541.  Accordingly, it is Plaintiffs, as the shareholders of the investment company that paid the compensation at issue in this case, that is authorized to bring suit on behalf of the SAM Funds.

At an absolute minimum, therefore, the shareholders of the SAM Funds should be able to bring their own claims for any excessive compensation they paid to PMC.[7]  It contravenes Congress' intent of providing "additional safeguards and protections to public investors" to allow investment advisers to insulate themselves from liability for compensation they receive merely by adding additional layers of fees structured such that the investment company it created pays the compensation and creating additional layers between a shareholder and the advisers and their affiliates to whom they pay compensation for services.  And it simply makes no sense that the

---

[7] If the Court agrees with Plaintiffs on this point, then Plaintiffs also should be able to bring claims on behalf of the shareholders of the Underlying Funds, regardless of which class of shares they hold.  *In re Am. Mut. Funds Fee Litig.*, No. 04-5593, 2009 WL 5215755, at *42 (C.D. Cal. Dec, 28, 2009) (holding Section 36(b) "does not distinguish among owners of different classes of shares in a mutual fund, and does not impose any requirement at the share class level.").

SAM Funds (and its shareholders) who own a significant stake in the Underlying Funds (and are even "control persons" with regard to some of the Underlying Funds) should not be able to vindicate their own rights but, instead, be required to find a shareholder in each of the eighteen Underlying Funds to help the SAM shareholders challenge compensation that they pay to PMC. Under Section 36(b), the shareholders of the SAM Funds are authorized to bring an action *on behalf of the SAM Funds* against PMC for the compensation it received for providing management services to the Underlying Funds because that compensation was deducted from the assets of the SAM Funds which means the SAM Funds, and therefore the SAM shareholders, paid that compensation to PMC.[8]

## III.   ALTERNATIVE RELIEF REQUESTED

In the alternative, pursuant to Federal Rule of Appellate Procedure 5(a)(3), Plaintiffs respectfully request that the Court reissue its MFR Order to include permission for Plaintiffs to file an interlocutory appeal on the limited question of standing with regard to the Underlying Funds.   A Court can grant permission for an interlocutory appeal where its order (1) involves a

---

[8] Plaintiffs feel obliged to address one point that the Court made in its MFR Order.  In that Order, the Court relied, in part, on the fact that Plaintiffs are not a party to the investment contracts between the Underlying Funds and their adviser (PMC).  The Court is quite correct, but its observation proves too much.  There is no dispute that Plaintiffs may bring a claim on behalf of the SAM Funds for the first layer of fees—the fees that the SAM Funds pay for those investment management services that are provided only to the SAM Funds. *See supra* p. 5.  Yet the Plaintiffs are not a party to the contract under which *those* services are paid, either.

In the mutual fund industry, the shareholders of a registered investment company are never parties to the investment services contract, which is always between the registered investment company (the mutual fund) and the investment adviser.  That is why, under § 36(b), mutual fund shareholders sue *on behalf* of a mutual fund.  The right to bring an action under § 36(b) is bestowed only upon "*a security holder* of such registered investment company *on behalf of* such company." 15 U.S.C. § 80a-35(b) (emphasis added); *see also Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535 n.11 (1984) (noting that Congress intended that the right established by § 36(b) is "to be asserted by the [investment] company's security holders and not by the company itself").

Further, as the Court noted at oral argument on Defendant's motion for reconsideration, in securities law, substance prevails over form. Hr'g Tr. at 20:17-19.  The Eighth Circuit has agreed, holding that the concepts surrounding securities "[i]n light of . . . the Supreme Court's admonitions that the definition of Securities should be a flexible one, . . . [and terms] must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities." *Miller v. Cent. Chinchilla Group, Inc.*, 494 F.2d 414, 416 (8th Cir. 1974).

controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 29 U.S.C. § 1292(b).

"[C]ontrolling," within the meaning of § 1292(b), means "dispositive." *See Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Here, that requirement is satisfied, because if Plaintiffs lack standing to bring their claims with respect to the Underlying Funds, those claims, insofar as they relate to the Underlying Funds, must be dismissed. The term "question of law" in § 1292(b) means a pure question of law that can be answered without further factual development. *See S.B.L. ex rel. T.B. v. Evans*, 80 F.3d 307, 311 (8th Cir. 1996); *accord, e.g.*, *Ahrenholz*, 219 F.3d at 676. Here, the question of statutory standing is a pure question of law. *See United States v. Carr*, 66 F.3d 981, 983 (8th Cir. 1995) (per curiam) (statutory interpretation is a question of law). Factual development is not necessary, since at this point in the litigation there *are* no questions of fact. Nor can the factual predicate on which the question of standing turns be genuinely disputed. *See supra* Section I. Further factual development is unnecessary.

With regard to the second factor, there clearly are substantial grounds for a difference of opinion on this question of first impression, given the Court's own change of view on the question. Moreover, an immediate appeal from the Court's MFR Order will materially advance the ultimate termination of the litigation, as having finality with respect to the potential damages arising from the large amount of excessive advisory fees charged for the Underlying Funds will impact the value of the case for settlement purposes.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant reconsideration of its MFR Order and reinstate its June 8, 2010 Motion to Dismiss Order allowing Plaintiffs to proceed on behalf of the SAM Funds as well as the Underlying Funds in which the SAM Funds invest. In the alternative, Plaintiffs respectfully request that the Court reissue its MFR Order to include permission for Plaintiffs to seek an interlocutory appeal on this limited issue.

DATED:  February 14, 2011                    Respectfully submitted by,


  /s/ Tana Lin
Lynn Lincoln Sarko
lsarko@kellerrohrback.com
Michael D. Woerner
mwoerner@kellerrohrback.com
Tana Lin
tlin@kellerrohrback.com
Laura R. Gerber
lgerber@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384


David H. Goldman
dgoldman@babichgoldman.com
Michael J. Carroll
mcarroll@babichgoldman.com
Kodi A. Brotherson
kbrotherson@babichgoldman.com
BABICH GOLDMAN, P.C.
100 Court Avenue, Suite 403
Des Moines, Iowa  50309-2200
Telephone:  (515) 244-4300
Facsimile:  (515) 244-2650

*Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on February 14, 2011, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to all parties so registered.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated: February 14, 2011

s/Tana Lin
Tana Lin
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384